## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

MARILYN NAVARRO-COLÓN,

    **Plaintiff,**

        **v.**                   **Civil No.** 21-1132 (FAB)

HÉCTOR RODRÍGUEZ-MULET,
MAITE ORONOZ-RODRÍGUEZ,

    **Defendants.**

### OPINION AND ORDER

BESOSA, District Judge.

    Defendants Héctor Rodríguez-Mulet ("Rodríguez") and Maite Oronoz-Rodríguez ("Rodríguez") (collectively, "defendants") move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Docket Nos. 22 & 25.)  For the reasons set forth below, the defendants' motion to dismiss is **GRANTED**.

### I.   Background

    This litigation seeks to invalidate the Puerto Rico bar examination.  Plaintiff Marilyn Navarro-Colón ("Navarro") earned a juris doctorate degree from the School of Law of the Pontifical Catholic University of Puerto Rico ("Catholic University") on May 25, 2001. (Docket No. 16 at p 1.)  She subsequently failed the Puerto Rico bar examination in September 2001, September 2002, March 2003, March 2004, March 2005, and March 2006.  (Docket No.

25, Ex. 1 at p. 1.)[1] Rule 5.8.1 of the Regulations for the Board

of Bar Examiners ("Rule 5.8.1") provides that:

> an applicant [who] has failed the General Bar
> Examination or the Notarial Law Examination on **six (6)
> different occasions**, after September 1983 . . . will no
> longer be admitted to any of these examinations.

(Docket No. 16, Ex. 1 at p. 20) (emphasis added).[2]  Consequently,

Navarro is ineligible for admission by examination.

---

[1] The dates of the relevant bar exams are absent from the complaint.  Ordinarily, a court may "consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion [to dismiss] is converted into one for summary judgment."  Alt. Energy, Inc. v. St Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  There is, however, a narrow exception by which a "document merges into the pleadings," Beddall v. State Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998), when the authenticity of that document is unchallenged, and the document is "central to the plaintiff's claim sufficiently referred to in the complaint, even if [it is] not physically attached to the pleading, Carrero-Ojeda v. Autoridad De Energía Eléctrica, 755 F.3d 711, 717 (1st Cir. 2014).  See Alt. Energy, Inc., 267 F.3d at 33 (considering a settlement agreement outside of the complaint when the complaint mentioned the document, interpretation of the document was determinative of whether the complaint failed to state a claim, and the authenticity of the document was not in dispute). The defendants submitted a certification from the Puerto Rico Board of Bar Examiners indicating the dates of examinations. (Docket No. 25, Ex. 2.)  Navarro concedes that "[no] controversy exists that plaintiff took the Bar Exam on six occasions between 2001 and 2006." (Docket No. 30 at p. 5.)  Consequently, the dates of the pertinent bar examinations are incorporated into the amended complaint.

[2] Thirty-two states impose "no limits on the number of times an applicant may sit for the bar exam."  Jeffery S. Kinsler, Is Bar Exam Failure a Harbinger of Professional Discipline?, 91 St. John's Rev. 883, 898 (2017) (citing Nat'l Conference of Bar Exam'rs & Bar Ass'n, Comprehensive Guide to Bar Admission Requirements 2017, at 20-22).  The following jurisdictions require applicants to attain a passing score within a certain threshold of successive examinations: Puerto Rico (6), the Virgin Islands (3), Kansas (4), Kentucky (5), Louisiana (5), New Hampshire (4), North Dakota (6), Rhode Island (5), Vermont (4).  Id. at pp. 901-02.   States such as Arizona, Maryland, Texas, and Virginia set discretionary limitations, permitting applicants to exceed a certain number of successive examinations with authorization from the relevant board of bar examiners.  Id.; see Md. R. Attorneys Rule 19-208(d) ("[If] an applicant fails three or more examinations, the Board may condition retaking the examination on the successful completion of specified additional study.").

The amended complaint asserts a tripartite challenge, citing the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (Docket No. 10 at p. 2.) First, Navarro maintains that Rule 5.8.1 deprives her of the right to practice law (assuming that she obtains a passing score on the examination). <u>Id.</u> at p. 6. Second, because applicants seeking admission in "every other profession" in Puerto Rico are afforded "an unlimited number of opportunities to take the qualifying exams," Navarro also alleges that Rule 5.8.1 is discriminatory. <u>Id.</u> at p. 4. Third, she contends that the "procedures used by the Board of Bar Examiners to select and grade the questions of the Bar exam" are arbitrary and capricious. <u>Id.</u> at p. 7. Navarro seeks declaratory and injunctive relief, requesting that this Court nullify Rule 5.8.1 (which would allow her to sit for the examination again), and order the defendants "to adopt a rational and uniform process for the selection and grading of Bar Exam Questions." <u>Id.</u> at p. 7.

**A. Rule 5.8.1**

The Supreme Court of Puerto Rico adopted Rule 5.8.1 in 1986, fifteen years before Navarro graduated from law school. (Docket No. 10 at p. 3.) Rodríguez is the Executive Director of the Puerto Rico Board of Bar Examiners, "responsible for the implementation" of Rule 5.8.1. <u>Id.</u> at p. 2. The Puerto Rico Supreme Court possesses the exclusive and inherent authority to

"regulate the legal profession" in Puerto Rico.  Rivera-Schatz v.
Commonwealth, 2014 RSPR 222, 2014 PR. Sup. LEXIS 122 (official
translation) (2014); see Ex Parte Sanjurjo, 55 P.R. Dec. 54, 1939
PR Sup. LEXIS 428 (1939) (official translation) (noting that the
practice of law "is a special privilege or concession, revocable
at the will of [the] Supreme Court, which is empowered to require
from any applicant for a license a demonstration, through the
corresponding examination, of his capacity and preparation for the
practice of law").[3]  Oronoz is the Chief Justice of the Puerto Rico
Supreme Court.  (Docket No. 10 at p. 32.)

Rule 5.8.1 survived constitutional scrutiny in 1999,
solidifying the six-exam limitation as a legitimate prerequisite
for admission to the bar.  Like Navarro, Víctor Velázquez-Feliciano
("Velázquez") failed "the Bar Exam on six (6) different occasions."
Feliciano v. Tribunal Supremo De Puerto Rico, 78 F. Supp. 2d 4, 7

---

[3] The Court invited the University of Puerto Rico School of Law ("UPR"), the
Interamerican University School of Law ("Interamerican"), and Catholic
University to appear as amici curiae.  (Docket No. 23.)   Interamerican and
Catholic University filed amici briefs in opposition to the defendants' motion
to dismiss.   (Docket Nos 43 & 61.)   UPR did not.   According to Catholic
University, the "Supreme Court incorrectly alleges that they are the only branch
to hold the 'inherent power' to regulate the legal profession in Puerto Rico."
(Docket No. 43 at p. 3.) Jurists such as Jaime Fuster, a former UPR law
profession and supreme court justice, have argued that the Puerto Rico
Constitution contemplates the establishment of an "'intermedial theory of legal
control,'" meaning that the "the powers granted to the court are neither
inherent nor exclusively judicial."  Id. at p. 5 (quoting Jaime B. Fuster, La
Misión del Abogado en el Mundo Contemporáneo y sus Implicaciones para las
Escuelas de Derechos, el Tribunal Supremo y el Colegio de Abogados, 36 REV. JUR.
UPR 579 (1967)).   Whether the authority to regulate the bar examination rests
exclusively with the Puerto Rico Supreme Court an intriguing question.   The
Court need not, however, address this issue to adjudicate the motion to dismiss.

(D.P.R. 1999) (Domínguez, J.).   He sued the Puerto Rico Supreme Court pursuant to the Equal Protection and Due Process Clauses of the Fourteenth Amendment.   Id.   The Court dismissed both claims on the merits, rejecting the proposition that Velázquez possessed a "constitutionally protected interest in taking the Bar Examination an unlimited number of times."   Id. at 18.   The Puerto Rico Supreme Court "has a legitimate interest in protecting the public from incompetent lawyers and repeated failures in a Bar Examination may in itself reflect upon a person's incompetency to practice law."   Id. at 19.   Accordingly, Rule 5.8.1 satisfied the rational basis standard of review.   Id.[4]

The policy set forth in Rule 5.8.1 is, however, disfavored by the Puerto Rico legislature.   In 2010, it adopted a more *laissez-faire* approach by passing Act 88.   Docket No. 10 at p. 4 (citing Laws P.R. Ann. tit. 20, § 23).   Pursuant to this statute,

---

[4] The Court is unaware of, and the parties do not cite, any legal authority supporting the proposition that a restriction akin to Rule 5.8.1 violated the Due Process or Equal Protection clause.   On the contrary, courts have repeatedly upheld these restrictions.   See Jones v. Bd. of Comm'rs, 737 F.2d 996, 1002 (11th Cir. 1984) (holding that "the limitation on the number of times one can sit for the Alabama bar examination is rationally related to the state's legitimate interest in ensuring the competency of its bar"); Younger v. Colo. State Bd. of Law Exam'rs, 625 F.2d 372, 376 (10th Cir. 1980) (holding that the rule imposing a limitation on "the number of times a person may take the written examination for admission to the bar in Colorado" did not violate the Fourteenth Amendment); Poats v. Givan, 651 F.2d 495, 499 (7th Cir. 1981) ("[The court] cannot conclude that the state of Indiana unconstitutionally exceeded its authority to insist on a competent bar by limiting the number of examinations to four").

"persons who wish to take licensure examination for any profession that so requires shall have **unlimited opportunities** to take and pass these examinations."   Laws P.R. Ann. tit. 20, § 23(a) (emphasis added).  Act 88 does not "apply to the legal profession." Id. § 23(c).

In 2012, however, the Puerto Rico legislature amended Act 88, urging the Puerto Rico Supreme Court "to revise the rules and regulations of the Board of Bar Examiners, [and] to determine whether it would be prudent for candidates for the bar examination to have unlimited opportunities to take and pass the same."  Id. According to Navarro, "[it] was expected by the Legislative Assembly that the Supreme Court of Puerto Rico would follow suit and amend its regulation to conform to the rule." (Docket No. 10 at p. 4.)  It did not.  Applicants seeking admission to the bar remain subject to Rule 5.8.1.

**B. The Puerto Rico Bar Examination**

The amended complaint alleges that the bar examination is flawed in several respects.  (Docket No. 10 at pp. 4-5.)  This examination is intended to assess an applicant's "ability to analyze legal problems." Laws P.R. Ann. tit. 4A, § 4.  Essay and multiple-choice questions test the applicants' knowledge of the following subjects: administrative law, constitutional law, corporations, family law, successions [wills and estates],

mortgage law, commercial law and negotiable instruments, criminal law, evidence, property law, ethics and professional responsibility, obligations and contracts, civil procedure, criminal procedure, and torts. Id.[5]

Navarro avers that: (1) the exam is not "fair," (2) "the test varies greatly from exam to exam," (3) "[q]uestions are drafted in a haphazard manner by different examiners," (4) the "[s]election of questions is subjective," (5) and that the failure rate is abnormally high. Id. at p. 4.

## II.  **Federal Rule of Civil Procedure 12(b)(6)**

To survive a Rule 12(b)(6) motion, the amended complaint must contain sufficient factual material "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Courts adopt a two-step approach to adjudicate motions to dismiss. First, a court "isolate[s] and ignore[s] statements in the

---

[5] Generally, the bar examination is a two-day event. The first day "is devoted to the Multistate Bar Examination (MBE), a standardized 200-item test covering six areas (Constitutional Law, Contracts, Criminal Law, Evidence, Real Property, and Torts)." The American Bar Association, Bar Admission Basic Overview (available at https://www.americanbar.org/groups/legal_education/resources /bar_admissions/basic_overview/) (last visited January 28, 2022). The MBE is produced by the National Conference of Bar Examiners. The essay component is normally administered on the second day. Id. The bar examinations in Louisiana and Puerto Rico are the exceptions, drafted by authorities from within the respective jurisdictions. The Bar Examiner: The Multistate Bar Examination (MBE), 2020 Statistics (available at https://thebarexaminer.ncbex.org/2020-statistics/the-multistate-bar-examination-mbe/#step1) (last visited January 28, 2022).

complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Second, a court "take[s] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief." Id.

"The relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 n.14 (2017)). An affirmative defense based on the statute of limitations "may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 113 (1st Cir. 2009) (citation and quotation omitted).

**A.    Section 1983**

The amended complaint centers on a single section 1983 cause of action.  Section 1983 "provides a venue for vindicating rights elsewhere conferred." Marrero-Sáez v. Aibonito, 668 F. Supp. 2d 327, 332 (D.P.R. 2009) (Casellas, J.) (citing Graham v.

M.S. Connor, 49 U.S. 386, 393-94 (1989)).    To prevail on her section 1983 claim, Navarro must demonstrate that: (1) the defendants deprived her of a constitutional right; (2) that a "causal connection exists between [defendants' conduct] and the [constitutional deprivation]; and (3) that the challenged conduct is attributable to a person acting under color of state law." Sánchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009) (citing 42 U.S.C. § 1983).

Section 1983 "borrow[s] the forum state's statute of limitations for personal-injury actions." Álamo-Hornedo v. Puig, 745 F.3d 578, 580 (1st Cir. 2014); see Santiago v. Puerto Rico, 655 F.3d 61, 69 (1st Cir. 2011) ("For purposes of section 1983, Puerto Rico is the functional equivalent of a state.").    In Puerto Rico, personal-injury tort actions have a one-year statute of limitations.    Quiñones-Irizarry v. Corporacíon del Fondo del Seguro del Estado, 257 F. Supp. 3d 206, 212 n.7 (D.P.R. 2017) (citing P.R. Laws Ann. tit 31, § 5289(2)) (Besosa, J.).    Federal law, however, governs the date on which the limitations clock begins to run.    Wallace v. Kato, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is not resolved by reference to state law.") (emphasis in original).    The "federal discovery rule" is the default accrual date for claims arising pursuant to section 1983.    See Romero v. Allstate Corp., 404 F.3d

212, 222 (3d Cir. 2005) ("Typically in a federal question case, and in the absence of any contrary directive from Congress, courts employ the federal 'discovery rule' to determine when the federal claim accrues for limitations purposes.") (citation omitted).

Here, the one-year statute of limitations period began on the date that Navarro "knew or had reason to know of the injury on which her claim rests." Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016).

## II.   The Amended Complaint is Time Barred

Navarro contends that the section 1983 cause of action is timely because the Puerto Rico legislature enacted and amended Act 88 in 2010 and 2012, respectively. (Docket No. 30 at p. 7.)   The defendants argue, however, that the section 1983 claims are time-barred.   (Docket No. 25 at p 5.)   The Court agrees with the defendants.

"The first step in fixing [the date of accrual] is to identify the actual injury of which the plaintiff complains." Guzmán-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994).   The alleged injuries sustained by Navarro are threefold.   First, Rule 5.8.1 renders her ineligible to sit for a seventh bar examination. (Docket No. 10 at p. 4.)   Second, the "procedures used to design and grade" the relevant questions allegedly violate Navarro's "liberty interest in [a] fair" bar examination.   Id. at p. 5; see

Civil No. 21-1132 (FAB)                                                11

Laws P.R. tit. 4A, § 6.0-1 (setting forth the grading procedures for the multiple-choice and essay questions).[6]   Third, Navarro claims that Rule 5.8.1 is discriminatory.

To set the date of accrual in a section 1983 action, each "claim is analyzed independently." Coll. Hill Props., LLC v. City of Worcester, 135 F. Supp. 3d 10, 14 (D. Mass. 2015) (citing Nieves v. McSweeney, 241 F.3d 46, 52-53 (1st Cir. 2001)).   Consequently,

---

[6] Navarro maintains that Rule 5.8.1 violates the "right to practice her profession" (Docket No. 10 at p. 5.)   The right to sit for an exam is, however, far different from the rights and privileges conferred to licensed professionals. See Martínez-Vélez v. Simonet, 919 F.2d 808, 810 (1st Cir. 1990) ("To have a property interest in a [state] benefit, . . . one must have more than an abstract need or desire for it.") (citation omitted).   Navarro hopes to pass the exam, but is neither now nor has she ever been a licensed attorney. Consequently, she cannot claim a property interest in a license to practice law. Compare Lowe v. Scott, 959 F.2d 323, 334 (1st Cir. 1992) ("This circuit recognizes that a physician enjoys a protected property interest in a license to practice medicine.") with Vives v. Bd of Pharmacy, 24 P.R. Dec. 669 (1916), 1916 P.R. Supp. LEXIS 731 (official translation) (The plaintiff acquired no property right to the [pharmacist] license, for he never complied with all the statutory requirements."); González-Droz v. González-Colón, 660 F.3d 1, 30 (1st Cir. 2011) ("[N]either the [Puerto Rico Board of Medical Examiners'] actions nor the result of those actions (the license suspension) remotely approach the level of a substantive due process violation."). Harron v. Town of Franklin, 660 F.3d 531, 533 (1st Cir. 2011). ("A would-be holder of a liquor license has no property interest in the license.").   The Court need not determine the extent of Navarro's alleged property rights to resolve the defendants' motion to dismiss.   This Opinion and Orders assumes, without deciding, that the right to sit for successive bar examinations is a cognizable property interest.

the substantive due process and equal protection claims require separate analyses.[7]

## A. Substantive Due Process

The Fourteenth Amendment decrees that no State may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To establish a substantive due process claim, Navarro must demonstrate that the defendants deprived her of a life, liberty, or property interest, "and that [they] did so through conscience-shocking behavior." Estate of Benner v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008) (citation omitted).

---

[7] The amended complaint does not distinguish between procedural and substantive due process. (Docket No. 10.) The former provides "individuals who are threatened with the deprivation of a significant liberty or property interest by the state notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Ford v. Bender, 785 F.3d 15, 24 (1st Cir. 2014) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). In contrast, substantive due process prohibits "'certain government actions regardless of the fairness of the procedures used to implement them.'" Brown v. Hot, Sexy & Safer Prods., 68 F.3d 525, 531 (1st Cir. 1995) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)); Lambert v. Fiorentini, 949 F.3d 22, 27-28 (1st Cir. 2020) ("Procedural due process guarantees that a state proceeding which results in a deprivation of property is fair, while substantive due process ensures that such state action in not arbitrary and capricious.") (citation committed). Navarro contends that Rule 5.8.1 precludes her from practicing law in Puerto Rico. (Docket No. 10). The amended complaint does not, however, aver that applicants have no recourse for review. Accordingly, the Court deems that the due process claim set forth in the amended complaint is substantive, not procedural. See, e.g., Burgos v. Camareno, 708 F. Supp. 25, 26 (D.P.R. 1989) ("The claim is one involving the substantive rather than the procedural component of the Due Process Clause; plaintiffs do not claim that the Municipality denied them protection without affording them appropriate procedural safeguards, but rather, that the Municipality was categorically obligated to protect them under the aforementioned circumstances.") (Pérez-Gimenez, J.).

### 1. The Right to Sit for a Seventh Bar Examination

Navarro failed her sixth and final bar examination in
March 2006. (Docket No. 25, Ex. 1 at p. 1.)  The amended complaint
does not set forth the date in which the Board of Bar Examiners
published the March 2006 examination results.  (Docket No. 10.)
For the sole purpose of determining the date of accrual, however,
the Court assumes arguendo that Navarro received the examination
results in March 2007.[8]  Accordingly, the date of accrual commenced
on this date because Navarro knew or had "reason to know of the
injury on which the [section 1983] action is based." Álamo-Hornedo
v. Puig, 745 F.3d 578, 581 (1st Cir. 2014).  On this date, she
knew or should have known that Rule 5.8.1 prohibited her from
sitting for a seventh bar examination. See Kuhnle Bros. v. County
of Geauga, 103 F.3d 516, (6th Cir. 1997) ("Kuhnle's substantive
Due Process claim for deprivation of property is time-barred . .
. Any deprivation of property that Kuhnle suffered was fully
effectuated when Resolution 91-87 was enacted, and that statute of
limitations began to run at that time.").  This action commenced
on March 23, 2021, fourteen years after the relevant date of

---

[8] "As soon as possible after the results of the examination are known, the
Executive Director [of the Board of Bar Examiners] shall provide . . . [a] list,
containing names and social security numbers of passing applicants from each
law school in Puerto Rico."  Laws P.R. Ann. tit. 4, § 14.1.

accrual. (Docket No. 1.) Accordingly, the substantive due process cause of action pertaining to Rule 5.8.1 is time-barred.

### 2. Question and Grading Deficiencies

Navarro argues that the "test difficulty varies greatly from exam to exam." (Docket No. 10 at p. 5.) Inconsistent grading standards and the high failure rate (70% for the 2019 bar examination) purportedly violate the Due Process Clause. Id. Navarro did not, however, take the March 2019 bar examination. The amended complaint does not identify which questions were "graded in a haphazard manner" or whether the "different persons" responsible for grading the September 2001, September 2002, March 2003, March 2004, March 2005 and March 2006 bar examinations employed subjective standards of review. Id.

All applicants who fail the Puerto Rico bar examination may "obtain a certified copy of his [or her] answers to the test and copy of the grading guidelines." Laws P.R. tit. 4A, § 10. Requests for certified copies must be submitted to the Board of Bar Examiners within 10 days of receiving notice of the score report. Id. Subsequently, the Board of Bar Examiners:

> shall forthwith set a date for the applicants who asked
> to see the examination, to appear at a place and time
> the Director sets for these purposes.  On that date,
> which cannot be later than thirty (30) days from the
> date of notice of the score report, each applicant will
> have from 8:30 a.m. to 12:00 noon and 1:00 p.m. to 4:00
> p.m. to examine his answers.  On or before the above-
> mentioned period, the Executive Director shall mail or
> otherwise make available to the applicants who timely
> applied therefor copies of their answers to the
> examination.

Id.  If her answers warranted a higher score, Navarro could have

petitioned for reconsideration by:

> [specifying] which questions and answers [were]
> allegedly graded erroneously.  [Setting] down in detail
> what was the mistake and the way in which said error, if
> committed, affected the applicant.  The applicant may
> include legal citations and citations from any authority
> he [or she] thinks should be considered by the Board.
> The assignment of manifest error may include errors in
> the addition of the score and clear grading mistakes
> that may be verified by comparing the answer with the
> grading guidelines.  Mere differences of opinion are not
> enough.

Id.  A series of personal tribulations purportedly prevented

Navarro from passing the exam.  (Docket No. 10 at p. 3.)  Grounds

for reconsideration do not, however, include the applicant's

"social or financial situation, work, personal sacrifice or

hardship, scores of prior examinations taken by him [or her], or

. . . any other circumstances extraneous to the merit of the

petition."  Laws P.R. tit. 4A, § 10.

The record does not indicate whether Navarro reviewed the

grading guidelines or petitioned for reconsideration.  Navarro

knew or should have known, however, that the question and grading protocols were suspect no later than March 2007, the date in which she received the March 2006 bar examination score.   Accordingly, the substantive due process cause of action associated with the question and grading protocols is also time-barred.

### B. Equal Protection

The Equal Protection Clause requires that similarly situated individuals be treated in a similar manner.   Marrero-Gutiérrez v. Molina, 491 F.3d 1, 9-10 (1st Cir. 2007) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985)).   To prevail on an equal protection cause of action, Navarro "must show state-imposed disparate treatment compared with others similarly situated in all relevant respects." Bruns v. Mayhew, 750 F.3d 61, 65 (1st Cir. 2014) (citation and quotation omitted).

Navarro maintains that bar applicants and "persons who wish to take licensure examinations for [other] professions" are similarly situated.   (Docket No. 10 at p. 4) (quoting Laws P.R. Ann. tit. 20, § 23(a)).   Putative practitioners in every field except law are granted an unlimited number of opportunities to pass the applicable licensure examinations.   Id.   This purported disparity originated in 2010, when the Puerto Rico legislature passed Act 88.   Id.   On August 22, 2012, it recommended that the Puerto Rico Supreme Court follow suit.   Id. §23(c).   Consequently,

Navarro's equal protection claim accrued no later than August 22, 2012.  On this date, Navarro knew or should have known that the six-exam restriction is unique to the legal profession.  <u>See Serrano-Nova v. Banco Popular de Puerto Rico, Inc.</u>, 254 F. Supp. 2d 251, 260 (D.P.R. 2003) ("A knowing plaintiff has an obligation to file promptly or lose his claim.") (Domínguez, J.).  Because Navarro filed the complaint nine years after the date of accrual, the equal protection cause of action is time-barred.

## C. The Continuing Violation Doctrine

Navarro attempts to extend the date of accrual by invoking the continuing violation doctrine.  (Docket No. 30 at p. 4.)  She argues that Rule 5.8.1 and the grading protocols constitute a "continuing systemic violation of plaintiff's rights."  (Docket No. 30 at p. 4.)  The Court disagrees with Navarro.

The continuing violation doctrine is an exception to the federal discovery rule.  Pursuant to this doctrine, Navarro may "recover for injuries that occurred outside the statute of limitations under certain narrow conditions."  <u>Gorelik v. Costin</u>, 605 F.3d 118, 120 (1st Cir. 2010) (citation omitted).[9]  The date of accrual is "delayed until a series of wrongful acts blossoms

---

[9] Although the continuing violation doctrine is derived from decisions interpreting Title VII of the Civil Rights Act of 1964, it "has been widely applied to § 1983 cases within the First Circuit."  <u>Ayala-Sepúlveda v. Municipality of San Germán</u>, 727 F. Supp. 2d 67, 72 (D.P.R. 2010) (Gelpí, J.).

into an injury on which suit can be brought.'" Id. (quoting Morales-Tañón v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008)); see Costin, 605 F.3d at 121 ("The First Circuit has expressed that the continuing violation doctrine does not apply to discrete discriminatory and retaliatory acts that do not require conduct to establish an actionable claim") (citation and quotation omitted).

"The core of the continuing violation doctrine is that certain wrongful acts are continuing in nature and that in such case an action is timely if filed within the limitations period dated from the last occurrence of wrongdoing." Joseph G. Cook and John L. Sobieski, Jr., Civil Rights Actions, ¶ 4.02 (Matthew Bender & Co. 2021). The doctrine is routinely applied in actions arising from hostile work environment allegations. Crowley v. L.L. Bean, Inc., 303 F.3d 387, 406 (1st Cir. 2002) (noting that a "hostile work environment is comprised of a series of separate acts that collectively constitute one unlawful employment practice.") (quoting Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)).

"Although the name of the doctrine may sound auspicious for late-filing plaintiffs, it does not allow a plaintiff to avoid filing suit so long as some person continues to violate his rights." Pérez-Sánchez v. Public Building Auth., 531 F.3d 104,

107 (1st Cir. 2008) (emphasis in original).  Courts distinguish
between continuing violations and the harmful effects of a discrete
act.  See Bonilla v. Trebol Motors Corp., 913 F. Supp. 655, 659-
60 (D.P.R. 1995) ("A continuing violation is occasioned by
continual unlawful acts, not by continual ill effects from an
original violation.") (citation and quotation omitted) (Pieras,
J.); Dávila-Torres v. Feliciano-Torres, (noting that "the proper
focus in continuing violation analysis is on the time of the
discriminatory act, not the point at which the consequences of the
act become painful.") (quoting Muñiz-Cabrero v. Ruiz, 23 F.3d 607,
611 (1st Cir. 1994) (emphasis in original).  For instance, actions
arising from the Fifth Amendment Takings Clause are exempt: The
"mere enactment of the statute amounts to a taking," providing the
plaintiff with the requisite knowledge of a cognizable claim.
Asociación de Suscripción Conjunta del Seguro de Responsabilidad
Obligatorio v. Jurabe-Jiménez, 659 F.3d 42, 51 (1st Cir. 2011)
("The transfer of funds into the Special Reserve each year is
simply the harmful effect of the passage of Rule LXX, the

underlying source of the Association's complaint.    Thus, the
continuing violation doctrine is inapposite.").[10]

Navarro misconstrues this exemption.    According to Navarro,
the "defendants' conduct in this case is systemic and ongoing, not
based on discrete acts."   (Docket No. 30 at p. 7.)   The "conduct"
referred to in the amended complaint is not a systemic violation,
but rather three discrete acts: the adoption of Rule 5.8.1, the
passage of Act 88, and the dates that the Board of Bar Examiners
administered the allegedly inadequate bar examinations.    That
Navarro is "currently deprived [of] the opportunity of taking the
exam because the Puerto Rico Judiciary has refused to rescind Rule
5.8.1" is the allegedly **harmful consequence** of the defendants'
actions.  See Díaz v. Román, 799 F. Supp. 2d 134, 139 (D.P.R. 2011)
("Simply arguing in their opposition that the actions and omissions
continue to this date, does not convert the alleged injuries into
continuing violations and save plaintiffs' claims from the statute
of limitations.") (citation and quotation omitted) (Besosa, J.);

---

[10] Continuing violations are serial or systemic.  Crowley, 303 F.3d at 405 (1st
Cir. 2002).  Serial violations are based on several discriminatory acts arising
from the same discriminatory animus, where each act constitutes a separate
actionable wrong.  Figueroa-Garay, 364 F.Supp.2d at 124 (citing Jensen v. Frank,
912 F.2d 517, 522 (1st Cir. 1990)).  A claim alleging a serial violation is
considered timely if one of the discriminatory acts occurred during the
limitations period.  Rivera Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d
15, 21 (1st Cir. 2001).   Systemic violations refer to situations "where an
employer maintains a discriminatory policy, responsible for multiple
discriminatory acts that fall outside the limitations period".  Crowley, 303
F.3d at 405.

Ingram v. Tenn. Dep't of Health, Case No. 17-1565, 2019 U.S. Dist. LEXIS 54366, at *42 (M.D. Tenn. Mar 29, 2019) ("[A]lthough Ingram claims that his damages continued to accrue until his license was reinstated in July 2017, such damages are continued 'ill effects' of the original decision to deny reinstatement of his license; they are not new injuries." (citation omitted).

The Court has no doubt that Navarro is intelligent and committed to the practice of law. Indeed, she graduated from Catholic University with honors and persevered even after multiple failed attempts to pass the bar examination. This determination is admirable. Moreover, the abysmal failure rates associated with the Puerto Rico bar examination suggest that reform is warranted. Regrettably, Puerto Rico and California have the lowest bar passage rates in the United States. See Michelle L. Tessier, Raising the Bar for Unaccredited Law Schools in California, 38 McGeorge L. Rev. 31, 33 (2007). Applicants perform progressively worse than their predecessors.

**[Continue to Next Page]**

| Puerto Rico Bar Examination Passage Rate[11] | | |
|---|---|---|
| Year | Overall Rate | First-Time Examinee |
| 2011 | 44% | 50% |
| 2012 | 36% | 45% |
| 2013 | 40% | 45% |
| 2014 | 39% | 45% |
| 2015 | 34% | 38% |
| 2016 | 36% | 39% |
| 2017 | 35% | 40% |
| 2018 | 36% | 38% |
| 2019 | 34% | 34% |
| 2020 | 33% | 35% |

[11] See The Bar Examiner, Ten-Year Summary of Bar Passage Rates, Overall and First-Time 2011-2020 (available at https://thebarexaminer.ncbex.org/2020-statistics/ten-year-summary-of-bar-passage-rates-overall-and-first-time-2011-2020/) (last visited January 27, 2022).

The national passage rate fluctuates between 54% and 69%, precipitously greater than this jurisdiction. Id. In 2019 for example, 419 applicants sat for the Puerto Rico bar examination. (Docket No. 43, Ex. 1 at p. 2.) Just 132 applicants (32%) passed the exam. Id.

Something is amiss. Applicants study law for three years, pass final exams, submit written assignments, participate in clinics, and graduate (often with honors). Yet, they falter at the precipice of success. Why are so many applicants from accredited law schools incapable of obtaining a passing score?

The Puerto Rico Supreme Court, the Board of Bar Examiners, UPR, Catholic University and Interamerican University have a vested interest in ensuring that the bar examination comports with modern testing standards. To qualify for American Bar Association ("ABA") accreditation, "[a]t least **75 percent** of a law school's graduates in a calendar year who sat for the bar examination must have passed [this test] within two years of their date of

graduation" ("Standard 316").[12]  Moreover, law schools must maintain a "program of legal education that prepares its students, upon graduation, for **admission to the bar**, effective, ethical, and responsible participation as members of the legal profession." Id. § 301(a) (emphasis added).  The Puerto Rico Supreme Court requires that applicants graduate from universities that are "approved by the American Bar Association."  Laws P.R. Ann. tit. 4, § 721. UPR, Catholic University, and Interamerican University are accredited by the ABA.  This accreditation, however, appears to be in peril.

Only five schools in the United States are in violation of Standard 316, two of which are Catholic University and Interamerican University.[13]  The latter is "currently in

---

[12] See American Bar Association, Standards and Rules of Procedure for Approval of Law Schools 2021-2022 (hereinafter, "Procedure for Approval") at p. 25 (available at https://www.americanbar.org/content/dam/aba/administrative/legal_education_and_admissions_to_the_bar/standards/2021-2022/2021-2022-aba-standards-and-rules-of-procedure.pdf) (last visited January 28, 2022). Failure to comply with the ABA Procedure for Approval may result in:

> (1) monetary payment; (2) a requirement that the law school refund all or part of tuition or fees paid by students; (3) Public censure; (4) private censure; (5) Publication or distribution of an apology or corrective statement by the law school; (6) A prohibition against initiating new programs for a specific period; (7) Probation for a specific period or until specific conditions are fulfilled; or (8) Withdrawal of provisional or full approval.

Id.

[13] See ABA Journal, What Comes Next for Law Schools with Two-Year Pass Rates Below 75%? (May 13, 2021) (available at https://www.abajournal.com/web/article/what-comes-next-for-law-schools-with-two-year-bar-pass-rates-below-75) (last visited January 28, 2022).

proceedings before the ABA Council regarding its compliance with
the new Standard 316." (Docket No. 61 at p. 4.).  The deans from
UPR, Catholic University, and Interamerican have met with the chief
justice on at least two occasions to discuss bar examination
reform. (Docket No. 43, Ex. 4 at p. 2.)  In fact, the law schools
have repeatedly requested that the bar examination be reformed,
but have been rebuffed.  Despite these dire circumstances, the
judiciary and academia are marred by disagreement and a lack of
transparency.

       According to Interamerican University and Catholic
University, the Puerto Rico Supreme Court and the Board of Bar
Examiners refuse to disclose data regarding the exam.  (Docket No.
43 at p. 7; Docket No. 61.)  Stephen Sireci ("Sireci"), a
psychometrician retained by Interamerican University, examined
whether the bar examination is "fair and valid for the purpose of
measuring the minimum skills and knowledge needed to practice law
in Puerto Rico."[14] (Docket No. 61, Ex. 2 at p. 2.)  He noted the
defendants' failure to share information to the various

---

[14] The extent to which performance on the Puerto Rico bar examination is even an
accurate predictor of how one will perform as a practicing lawyer is unclear to
the Court.  The undersigned knows plenty of competent and successful attorneys
who have failed the Puerto Rico bar examination.  By the same token, the
undersigned is also aware of licensed attorneys who passed the Puerto Rico bar
examination on the first try, and are deficient in analyzing legal issues and
in providing competent representation to their clients.  It appears to the Court
that the only thing the Puerto Rico bar exam measures is how well one takes the
Puerto Rico Bar exam.  The legal profession deserves better.

"stakeholders" and poor record keeping practices.  Id. at p. 5.
"It is inconceivable to [Sireci] that a body in charge of
regulating the legal profession in Puerto Rico is unable to explain
how the passing score on the exam was set," or to produce formal
documentation regarding this matter.  Sireci also avers that "the
method for setting the passing score on the PR Bar exam was used
as an example of a flawed and arbitrary procedure 20 years ago in
a national law publication, and to date the Board has done nothing
to adjust or validate the passing standard."  Id. at p. 10.

The Board of Bar Examiners "[intends] to evaluate the
minimum required score for candidates to pass [the exam]."  (Docket
No. 61, Ex. 1 at p. 59.)  The Puerto Rico Supreme Court convened
a special commission to evaluate the bar examination in 2021.  Id.
at p. 57 (quoting In Re: Special Commission to Evaluate Cut Scores
for General and Notarial Law Bar Exams, EC-2021-02 (2021).  It
maintains, however, that the "Board of Bar Examiners has performed
its duties in accordance with the structure and framework adopted
by the [Puerto Rico Supreme Court, resulting] in a system for bar
exams that is consistent over time."  Id. at p. 2.

On January 21, 2020, ACS Ventures ("ACS") and the Puerto
Rico Supreme Court entered into a professional service agreement.
(Docket No. 43, Ex. 2.)  Pursuant to this agreement, ACS "conducted
a standard setting study on the Puerto Rico General Bar and

Notarial Law Examinations." Id.  The law schools have "been denied

access to [ACS] study." (Docket No. 43 at p. 7.)  The record does

not indicate whether the Puerto Rico Supreme Court has reviewed

the ACS study, or if the Board of Bar Examiners modified the exam.

The fate of the Puerto Rico bar is contingent on the

character and fitness of recent law school graduates, an invaluable

asset to our society.  These individuals will counsel clients

throughout the pending economic crisis, address the legal

ramifications of a global pandemic, prosecute criminal actions in

an impartial manner, defend those accused of crimes, sit on the

Puerto Rico and federal benches, and pursue careers in academia.

Surely, the implementation of a reliable bar examination is

feasible.  Failure to reform a defective examination is a

disservice to current and prospective members of the bar, and to

the legal profession itself.

The Puerto Rico Supreme Court and law schools must

cooperate to protect the legal profession from incompetency, and

to prevent an erosion of trust in the bar examination.  The

participation of law schools in the reform process is crucial.

The UPR, Catholic University, and Interamerican University are

invested in the success of their alumni and offer a reservoir of

experience and knowledge regarding legal doctrine and pedagogy.

Navarro's claims pertaining to the bar examination are serious.   Unfortunately, however, the applicable statute of limitations precludes the Court from granting her any type of relief.   Because the section 1983 cause of action is time-barred, the amended complaint is **DISMISSED**.

## IV.   Conclusion

The defendants' motion to dismiss the amended complaint is **GRANTED**.   (Docket Nos. 22 & 25.)   This action is **DISMISSED WITH PREJUDICE**.   Judgment shall be entered accordingly

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 28, 2022.


s/ Francisco A. Besosa

FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE